Deborah A. Sivas (Calif. Bar No. 135446)
Leah J. Russin (Calif. Bar No. 225336)
Carolyn Bills (Certified Law Student)
Edmund J. Gorman, Jr. (Certified Law Student)
ENVIRONMENTAL LAW CLINIC
Mills Legal Clinic at Stanford Law School
Crown Quadrangle
559 Nathan Abbott Way
Stanford, California 94305
Telephone: (650) 723-0325
Facsimile: (650) 723-4426
dsivas@stanford.edu
leahrussin@law.stanford.edu

Andrea A. Treece (Calif. Bar No. 237639)
CENTER FOR BIOLOGICAL DIVERSITY
351 California Street, Suite 600
San Francisco, California, 94104
Telephone: (415) 436-9682
Facsimile: (415) 436-9683
atreece@biologicaldiversity.org

Attorneys for Plaintiff Center for Biological Diversity

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL CHERTOFF, in his official capacity as Secretary of the U.S. Department of Homeland Security, REAR ADMIRAL CRAIG E. BONE, in his official capacity as Commander of U.S. Coast Guard District Eleven, and UNITED STATES COAST GUARD, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |

COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

# I. INTRODUCTION

1. All too often, endangered whales are killed by collisions with ship traffic off the California coast without any account of how these deaths may affect the species as a whole. The area's ecological richness and its proximity to major ports make it a magnet for whales and ship traffic alike. Whales rely on these waters to provide critical food sources and migratory corridors. For instance, blue whales, the largest mammals on earth and some of the most imperiled, congregate off the coast in the summer and fall to feed on concentrated swarms of krill. Humpback, sei, sperm, and the nearly extinct North Pacific right whale also use these waters. In increasing numbers, ships use the same area en route to discharge their cargo at major West Coast ports. Unfortunately, the combination has proven deadly for too many whales. Whales that are near the surface while breathing, feeding, resting, or simply transiting the area are vulnerable to massive, fast-moving commercial ships that may not even be aware of their presence. Unable to escape the path of those giant vessels, whales are struck, injured, and killed.

2. As the federal agency that regulates and directs the considerable vessel traffic off the California coast, the United States Coast Guard ("Coast Guard") must insure through consultation with the National Marine Fisheries Service ("NMFS") that its actions will not jeopardize blue whales and other protected species as required by the Endangered Species Act ("ESA"). Yet the Coast Guard has never consulted with NMFS regarding the effects of ship traffic on whales and other listed species in the waters off of California.

3. The unprecedented number of endangered blue whales killed by collisions with ships (also known as "ship strikes") in the Santa Barbara Channel in 2007 presents a vivid example of the harm wrought by the Coast Guard's failure to comply with its duties under the ESA. Ship traffic in the Santa Barbara Channel, which leads to two of the busiest ports in the world, poses a known threat to the survival and recovery of a number of endangered whale species. In 2007 alone, ship collisions killed at least three blue whales in the Santa Barbara Channel, and it is likely that even more blue whales were injured or killed by ship strikes in this channel but were not detected. These whales belonged to a population so imperiled that the death of just one of them is sufficient to

prevent the population's recovery. If ships continue to kill blue whales at the rate observed in 2007, the species' survival and recovery will be at even greater risk.

4. Despite this threat, the Coast Guard has failed to fulfill its non-discretionary duty under the ESA to ensure that ship traffic does not jeopardize the blue whale or any other endangered whale species. Until the Coast Guard completes consultation with NMFS and undertakes actions necessary to avoid jeopardy to the species, ships will continue to strike and kill endangered whales in the Santa Barbara Channel.

5. Plaintiff Center for Biological Diversity seeks an order compelling the Coast Guard to consult with NMFS regarding the effects of ship traffic on blue whales and other endangered and threatened species inhabiting the waters off the California coast, including the Santa Barbara Channel. Plaintiff further seeks an order requiring such action as is necessary to protect blue whales and other species until the Coast Guard completes formal consultation as required by the ESA. Such relief is necessary to prevent illegal agency action and forestall irreparable injury to protected species.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), § 2201 (declaratory relief), and § 2202 (injunctive relief), and 16 U.S.C. §§ 1540(c), (g) (action arising under the ESA and citizen suit provision).

7. This action arises under 16 U.S.C. § 1540(g) and alleges violations of the ESA, 16 U.S.C. § 1531 *et seq.* Pursuant to the ESA, 16 U.S.C. § 1540(g), Plaintiff provided written notice to the Coast Guard, the Secretaries of Homeland Security and Commerce, and the Assistant Administrator for Fisheries of the violations alleged in this Complaint more than 60 days ago. The Coast Guard has not remedied the violations.

8. Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) because the Coast Guard Eleventh District and Pacific Area headquarters, which coordinate vessel traffic and implement a number of traffic separation schemes off the California coast, including those in Santa Barbara Channel, approaching Los Angeles and Long Beach, and off San Francisco, are located within the jurisdiction of this Court, on Coast Guard Island in Alameda, California, and the office of

1  Rear Admiral Craig E. Bone is located at the Coast Guard Eleventh District headquarters on Coast
2  Guard Island. Furthermore, no real property is involved in this action.
3      9.    Pursuant to Civil Local Rule 3-2(c)-(d), the appropriate intradistrict assignment of
4  this case is to the San Francisco or Oakland Division.

### III. PARTIES

6      10.   Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("the Center") is a non-profit
7  corporation dedicated to the preservation, protection and restoration of biodiversity, native species,
8  ecosystems, and public lands. The Center has over 40,000 members, many of whom reside in
9  California. The Center maintains offices in San Francisco, Los Angeles, San Diego, and Joshua
10 Tree, California, as well as in Arizona, New Mexico, Oregon, Vermont, and Washington, D.C. The
11 Center's members and staff regularly use waters of the Pacific Ocean off the coast of California for
12 observation, research, aesthetic enjoyment, and other recreational, scientific and educational
13 activities. The Center's members and staff have researched, studied, observed and sought
14 protection for many federally-listed threatened and endangered species that inhabit the Pacific,
15 including the blue whale. The Center's members and staff have visited and observed each of the
16 species at issue in this suit in the waters off California or elsewhere in the Pacific. The Center's
17 members and staff intend to continue to visit and observe, or attempt to visit and observe, these
18 species in the future. The Center's members and staff derive scientific, recreational, conservation,
19 and aesthetic benefits from these rare species' existence in the wild. The Center brings this action
20 on behalf of itself and its adversely affected members.
21     11.   Plaintiff's members and staff rely on the Coast Guard to comply with the ESA,
22 especially Section 7 consultation requirements, 16 U.S.C. § 1536, which assure that federal
23 agencies incorporate concerns for threatened and endangered species into all agency actions. In this
24 regard, Plaintiff's members and staff derive scientific, recreational, health, conservation, spiritual,
25 and aesthetic benefits from the preservation and protection of threatened and endangered species
26 under the ESA. Plaintiff's members and staff have been, and are now, adversely affected and
27 injured by the Coast Guard's failure to comply with the ESA. Plaintiff's members and staff will
28 continue to be adversely affected and injured unless relief is granted.

12. Plaintiff's members and staff have also suffered procedural and informational harms connected to their substantive conservation, recreational, scientific and aesthetic interests from the Coast Guard's failure to comply with the consultation process as mandated by Section 7 of the ESA, 16 U.S.C. § 1536. Plaintiff's members and staff rely on the consultation process to protect threatened and endangered species from injuries inflicted as a result of vessel traffic separation schemes implemented by the Coast Guard. The consultation process provides agency decision-makers, Plaintiff, and the public with essential information about the effects of actions approved by the Coast Guard on threatened and endangered species. The Coast Guard's failure to properly carry out this process deprives Plaintiff of this information and therefore additionally harms Plaintiff's interests. Plaintiff has no adequate remedy at law.

13. Defendant MICHAEL CHERTOFF is the Secretary of the United States Department of Homeland Security, which is responsible for the operation of the United States Coast Guard.

14. Defendant REAR ADMIRAL CRAIG E. BONE is the commander of the U.S. Coast Guard District Eleven. He is responsible for all Coast Guard missions in the Eleventh District, and he maintains an office in this district.

15. Defendant UNITED STATES COAST GUARD is an agency of the Department of Homeland Security and the government of the United States. The Coast Guard is charged with designating and implementing traffic separation schemes and other routing measures for vessels operating within the Santa Barbara Channel. The Coast Guard's Eleventh District and Pacific Area headquarters are located on Coast Guard Island in Alameda, California, along the east side of San Francisco Bay.

## IV. LEGAL BACKGROUND

### A. The Coast Guard's Duty to Protect Endangered Species

16. The Endangered Species Act, 16 U.S.C. § 1531 *et seq.*, was enacted, in part, to provide a "means whereby the ecosystems upon which endangered species and threatened species depend may be conserved . . . [and] a program for the conservation of such endangered species and threatened species . . . ." 16 U.S.C. § 1531(b).

17. In carrying out these purposes, all federal agencies must, through consultation with

NMFS (regarding most marine species) or the U.S. Fish and Wildlife Service (regarding most terrestrial species), insure "that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species." 16 U.S.C. § 1536(a)(2) (Section 7 consultation requirement). Pursuant to section 7(a)(2) of the ESA, the Coast Guard is required to consult with NMFS prior to undertaking any activity or program that may affect endangered or threatened marine species in the Santa Barbara Channel and other shipping lanes. NMFS must then advise the Coast Guard whether the action would jeopardize the survival and recovery of the species. NMFS may also impose restrictions or require mitigation to minimize the impacts of the action on the species and habitat.

**B.    The Coast Guard's Authority to Regulate Ship Traffic in the Santa Barbara Channel and Other Shipping Lanes Off the California Coast.**

18.    The Ports and Waterways Safety Act ("PWSA") gives the Coast Guard the authority to regulate navigation within the jurisdiction of the United States, including the Santa Barbara Channel and other designated shipping lanes, and the responsibility to protect the marine environment while doing so. 33 U.S.C. § 1221 *et seq.* ("navigation and vessel safety, [and] protection of the marine environment . . . are matters of major national importance," "increased vessel traffic in the Nation's ports and waterways creates substantial hazards to life, property and the marine environment,").

19.    The Coast Guard is authorized to: (1) designate necessary fairways and traffic separation schemes for vessels; (2) operate and maintain "vessel traffic services" which consist of "measures for controlling or supervising vessel traffic or for protecting navigation and the marine environment"; and (3) control vessel traffic in hazardous areas by establishing traffic routing schemes, vessel speed and size limitations, and vessel operating conditions; and (4) and restrict operations in hazardous areas. 33 U.S.C. § 1223. These measures include routing systems and fairways such as the traffic separation scheme in the Santa Barbara Channel.

20.    In undertaking each of these actions, the PWSA requires that the Coast Guard "take into account all relevant factors concerning navigation and vessel safety, [and] protection of the

marine environment," including "any other potential or actual conflicting activity" and "environmental factors." 33 U.S.C. § 1224(a).

21. After traffic and vessel services or other measures have been established, the PWSA further authorizes the Coast Guard to adjust the location or limits of a traffic separation scheme, "in order to accommodate the needs of other uses which cannot be reasonably accommodated otherwise . . . ." 33 U.S.C. § 1223(c)(5)(C). The statute also directs that the Coast Guard "shall issue, and may from time to time amend or repeal, regulations necessary to implement this Act." 33 U.S.C. § 1231(a).

22. Accordingly, the Coast Guard retains ongoing discretionary authority to adjust vessel traffic patterns and speed in shipping lanes such as the Santa Barbara Channel in order to protect endangered species. The Coast Guard has implemented its authority in the Santa Barbara Channel, the approaches to the ports of Los Angeles and Long Beach, and off San Francisco by: (1) establishing traffic separation schemes in these areas; (2) amending the traffic separation schemes; (3) advising vessels of the location of the traffic separation schemes through vessel traffic services, navigational aids, and notices to mariners; and (4) monitoring the location and conditions within the traffic separation schemes and adjusting them as needed. It has, however, failed to adjust conditions to protect the blue whale and other species from vessel traffic in the Santa Barbara Channel and elsewhere. It has also failed to consult with NMFS regarding how to maintain traffic separation schemes off the California coast, including in the Santa Barbara Channel, to avoid harm to endangered species in these areas.

## V. FACTUAL BACKGROUND

**A.    Endangered Whales Occurring Off the California Coast**

23. The Ports of Los Angeles and Long Beach are the most active of the U.S. ports, with thousands of large vessels arriving each year. These vessels travel through the Santa Barbara Channel and the abutting approach to Los Angeles-Long Beach using the traffic separation schemes implemented by the Coast Guard. As a consequence, the northbound and southbound shipping lanes in the Santa Barbara Channel and the Los Angeles-Long Beach approach are among the busiest in the world.

24. Similarly, numerous vessels travel to the ports of San Francisco and Oakland using the traffic separation schemes off San Francisco implemented by the Coast Guard.

25. The shipping lanes off the coast of California provide essential habitat for a number of endangered whales. The overlap of these shipping lanes with the foraging habitat and migratory routes of whales puts these endangered species at great risk. These whales, which are protected under the ESA, are threatened by ships within the channels. In recent years, numerous whales have been killed in the waters off the coast of California.

### 1. The Blue Whale

26. The largest animal known to have ever lived on earth, the blue whale (*Balaenoptera musculus*) has been listed as "endangered" under the ESA since 1970. Once numbering over 300,000, the global blue whale population has been reduced by commercial whaling to likely fewer than 10,000 individuals. Blue whales off California are part of the Eastern North Pacific Stock, one of two North Pacific stocks identified by distinct, stereotypic calls. According to NMFS, the current best estimate for the Eastern North Pacific Stock is 1,186 animals.

27. In 1998, NMFS approved a final recovery plan for the blue whale. The recovery plan identifies ship strikes as one of the primary threats to the species in the Pacific. The recovery plan also recommends that appropriate agencies "[i]dentify areas where ship collisions with blue whales might occur, and areas where concentrations of blue whales coincide with significant levels of maritime traffic or pollution," and "[i]dentify and implement methods to reduce ship collisions with blue whales." NMFS Final Recovery Plan for the Blue Whale, *Balaenoptera musculus*, at 24 (1998). The recovery plan concludes that "implementation of appropriate measures designed to reduce or eliminate such problems are essential to recovery." *Id.*

28. NMFS has determined that the Eastern North Pacific Stock can only incur one non-natural death (e.g., death resulting from a collision with a ship) per year in U.S. waters while still reaching or maintaining its optimal sustainable population. In recent years, blue whales in particular appear to be dying non-natural deaths in increasing numbers in the Santa Barbara Channel. Ships are known to have killed and injured blue whales in 1980, 1986, 1987, 1993, 2002, 2003, 2004, and 2007.

29. In 2007, an unprecedented number of whales were killed and injured as a result of collisions with ships. Between September 8 and September 19, 2007, there were at least five sightings of blue whale carcasses in the area extending from Santa Cruz Island to just north of San Diego. Additionally, the carcasses of an adult female and a very young animal were observed washed ashore on San Miguel Island on November 29, 2007. Complete necropsies were performed on two blue whale carcasses and a third carcass was examined; in each case, the injuries observed were consistent with wounds sustained from collisions with ships. Additional blue whale mortalities from ships have likely occurred without being reported.

### 2. Other Threatened and Endangered Species Off the California Coast

30. Humpback whales (*Megaptera novaeangliae*) have been listed as "endangered" under the ESA since 1970. The whales affected by the Coast Guard's activities in the shipping lanes off the coast of California are part of the Eastern North Pacific stock, which has an estimated population of just over 1,300. NMFS has determined that the most non-natural deaths that the stock can withstand while still reaching its optimal sustainable population is 2.3 animals per year in U.S. waters. As NMFS acknowledged in its 2005 Stock Assessment Report, humpback whales are likely killed or injured in collisions with ships that go unreported.

31. Humpback whales regularly travel through and near the shipping lanes, putting them at risk. The humpback's tendency to inhabit coastal waters makes it the second most common species to be injured or killed in collisions with ships. Humpbacks use this area for feeding as well as migrating to and from their calving grounds along the west coast of Mexico and Central America. Traffic within shipping lanes therefore poses a particular danger to migrating reproductive females.

32. The sei whale (*Balaenoptera borealis*) is listed under the ESA as "endangered." Its range includes the coast of California, including the shipping lanes. NMFS estimates the population of the Eastern North Pacific Stock of sei whales to be as low as 35 animals, meaning that this population can survive no more than one non-natural death every *ten years* in U.S. waters while reaching its optimum sustainable population.

33. The sperm whale (*Physeter macrocephalus*) is listed under the ESA as "endangered." The population of the California/Oregon/Washington stock of the sperm whale is

1  estimated to be as low as 885 individuals. This stock cannot sustain more than 1.8 non-natural
2  deaths per year in U.S. waters while reaching its optimum sustainable population.

3  34.  The North Pacific right whale (*Eubalaena japonica*) is listed as "endangered" under
4  the ESA. It is nearly extinct, numbering as few as a dozen animals in the North Pacific. Its range
5  includes the waters along the coast of California, including shipping lanes.

6  35.  In addition to the identified blue whale and humpback whale ship strike mortalities
7  in the Santa Barbara Channel, numerous reported but unidentified whales have been killed in
8  collisions with ships off the coast of California in recent years.

9  36.  Other threatened and endangered species, such as southern resident killer whales and
10 leatherback and loggerhead sea turtles, also occur in the waters off the California coast, including
11 the Santa Barbara Channel, Los Angeles-Long Beach approach, and approach to San Francisco. All
12 of these species may be affected by ship traffic in these areas.

   C.  **The Coast Guard's Actions Related to the Santa Barbara Channel and Other Shipping Lanes Off the California Coast**

15 37.  Despite the documented ship strikes and the recommendations of the blue whale
16 recovery plan, the Coast Guard has never consulted with NMFS regarding its actions under the
17 PWSA related to the waters off the California coast, which include the implementation of the Santa
18 Barbara Channel traffic separation scheme in the Santa Barbara Channel, in the approaches to Los
19 Angeles-Long Beach, and off San Francisco, as required by the section 7 of the ESA. 16 U.S.C. §
20 1536(a)(2).

21 38.  The Coast Guard first implemented a traffic separation scheme in the Santa Barbara
22 Channel in 1969, before enactment of the ESA. The Coast Guard has also implemented traffic
23 separation schemes in the approaches to Los Angeles-Long Beach, which abut the Santa Barbara
24 Channel, and off San Francisco. Over the years, the Coast Guard has proposed amendments to
25 these traffic separation schemes which have been adopted by the International Maritime
26 Organization. After their adoption by the International Maritime Organization, the Coast Guard
27 exercised its authority to promulgate the amendments in regulations.
28

39.     In 2000, the Coast Guard promulgated regulations to implement changes to the Santa Barbara Channel and traffic separation scheme off San Francisco and to codify the traffic separation schemes in regulation. In taking these actions, the Coast Guard did not insure through consultation with NMFS that its actions would not jeopardize the continued existence of endangered species as required by section 7 of the ESA.

40.     Since 2000, the Coast Guard has continued to implement the traffic separation scheme in the Santa Barbara Channel, Los Angeles-Long Beach approaches, and approaches to San Francisco by continuously reviewing them, advising vessel traffic of their location and constraints, monitoring and coordinating vessel traffic, and carrying out enforcement activities with respect to vessel traffic. In each of these actions, the Coast Guard had, and continues to have, discretion as to whether and how to implement the traffic separation schemes.

41.     Despite the documented blue whale and humpback whale ship strikes over the years, and particularly the devastating number of fatal strikes in the Santa Barbara Channel in 2007, and despite its mandate under the PWSA to protect the marine environment and the species therein, the Coast Guard has never consulted with NMFS under section 7 of the ESA regarding its impacts upon endangered species from any of these actions.

## CAUSE OF ACTION

### (Violation of ESA Consultation Requirements)

42.     Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 41 of this Complaint.

43.     The Coast Guard's activities under the PWSA in the Santa Barbara Channel and other shipping lanes off the California coast, including the designation, codification, and continued implementation of the traffic separation schemes through vessel traffic services and other authorized routing measures, represents discretionary "agency action" within the meaning of 16 U.S.C. § 1536(a)(2) that "may affect" threatened and endangered species. The Coast Guard is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to consult with NMFS to ensure that its actions related to these shipping lanes will not jeopardize the continued existence of threatened and endangered species, including whales.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment providing the following relief:

1) A declaration that the Coast Guard is violating section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2), and its implementing regulations by failing to insure through consultation that the designation, codification, and continued implementation of the traffic separation schemes in the Santa Barbara Channel and other shipping lanes off the California coast will not jeopardize the continued existence of whales and other threatened and endangered species;

2) An order requiring the Coast Guard to initiate consultation with NMFS on the impacts of the designation, codification, and continued implementation of the traffic separation schemes off the California coast, including the scheme in the Santa Barbara Channel, and other vessel routing activities under the PWSA on threatened and endangered species;

3) An order requiring the Coast Guard to impose such measures as necessary and proper to prevent harm to endangered and threatened species in the Santa Barbara Channel and other shipping lanes off the California coast until the Coast Guard has completed consultation with NMFS to insure that its actions will not jeopardize the continued existence of such endangered and threatened species;

4) An order awarding Plaintiff its costs of litigation, including reasonable attorneys' fees, pursuant to 16 U.S.C. § 1540(g)(4); and

5) Such other relief as the Court deems just and proper.

Dated: June 18, 2008

Respectfully submitted,

Andrea A. Treece
CENTER FOR BIOLOGICAL DIVERSITY
351 California Street, Suite 600
San Francisco, California 94104
Phone: 415-436-9682
Facsimile: 415-436-9683
E-mail: atreece@biologicaldiversity.org

COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF                    12