1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                       FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   CENTER FOR BIOLOGICAL DIVERSITY,         No. C-08-2999 MMC

12           Plaintiff,                        **ORDER GRANTING DEFENDANTS'**
                                               **MOTION FOR SUMMARY JUDGMENT;**
13      v.                                     **DENYING PLAINTIFF'S MOTION FOR**
                                               **SUMMARY JUDGMENT**
14   MICHAEL CHERTOFF, et al.,

15           Defendants.
     _____/

16

17          Before the Court are plaintiff's motion for summary judgment, filed August 26, 2008,

18   and defendants' cross-motion for summary judgment and opposition to plaintiff's motion,

19   filed November 14, 2008.  On December 12, 2008, plaintiff filed a combined opposition to

20   defendant's cross-motion and reply to defendants' opposition to plaintiff's motion.  On

21   January 9, 2009, defendants' filed a reply to plaintiff's opposition to defendants' cross-

22   motion.  On January 20, 2009, the Court afforded plaintiff an opportunity to file a sur-reply

23   and ordered plaintiff to show cause why certain of plaintiff's claims should not be dismissed

24   for lack of subject matter jurisdiction.  On February 6, 2009, plaintiff filed a combined sur-

25   reply and response to the Court's Order to Show Cause ("OSC").  On February 12, 2009,

26   defendants filed a response to plaintiff's sur-reply.  Having read and considered the papers

27   filed in support of and in opposition to the parties' respective motions, the Court rules as

28   follows.

*United States District Court*
*For the Northern District of California*

**BACKGROUND**

In the instant action, plaintiff alleges defendant United States Coast Guard ("Coast Guard") has violated § 7(a)(2) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(a)(2) ("§ 7(a)(2)"), by failing to consult with the National Marine Fisheries Services ("NMFS") to "ensure" that the Coast Guard's "activities under" the Ports and Waterways Safety Act ("PWSA"), 33 U.S.C. § 1221 et seq., "in the Santa Barbara Channel and other shipping lanes off the California coast . . . . will not jeopardize the continued existence of threatened and endangered species."  (See Compl. ¶ 43.)

**A.    Legal Framework**

Section § 7(a)(2) of the ESA provides, in relevant part:

> Each Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any agency action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary, after consultation as appropriate with affected States, to be critical, unless such agency has been granted an exemption for such action by the Committee pursuant to subsection (h) of this section.

See § 7(a)(2).  Regulations promulgated under the ESA define "action" as "all activities or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal agencies in the United States or upon the highs seas."  See 50 C.F.R. § 402.02.  If a federal agency determines that a proposed action "may affect listed species or critical habitat," it must initiate formal consultation with NMFS, unless the agency determines, after informal consultation or the preparation of a biological assessment, that the proposed action "is not likely to adversely affect any listed species or critical habitat."  See 50 C.F.R. § 402.14(a)-(b).  During formal consultation, NMFS must complete a biological opinion as to whether the proposed action "is likely to jeopardize the continued existence of a listed species or result in the destruction or adverse modification of critical habitat."  See 50 C.F.R. § 402.14(g)-(h).  "If jeopardy or adverse modification is found, the Secretary shall suggest those reasonably and prudent alternatives which he believes would not violate [§ 7(a)(2)] and can be taken by the Federal agency or applicant in implementing the agency

2

1    action." See 16 U.S.C. § 1536(b)(3)(A).

2        Under the PWSA, the Coast Guard "may construct, operate, maintain, improve, or

3    expand vessel traffic services, consisting of measures for controlling or supervising vessel

4    traffic or for protecting navigation and the marine environment," and "may control vessel

5    traffic in areas . . . which the Secretary determines to be hazardous." See 33 U.S.C. §

6    1223(a)(1), (4).  The Coast Guard also may designate Traffic Separation Schemes ("TSS")

7    for vessels operating in approaches to ports.  See § 1223(c)(1).  Regulations promulgated

8    under the PWSA define a TSS as a "designated routing measure which is aimed at the

9    separation of opposing streams of traffic by appropriate means and by the establishment of

10   traffic lanes." See 33 C.F.R. § 167.5(b).  In order for a new TSS or a modification to an

11   existing TSS to be internationally recognized, it must be approved by the International

12   Maritime Organization ("IMO") prior to implementation by the Coast Guard.  See 64 Fed.

13   Reg. 32451, 32452.  A vessel is not required to use a TSS, but if it does, it must "proceed

14   in the appropriate traffic lane and . . . follow the general traffic flow for that lane." See id.

15   **B.    Factual Background**

16       The following facts are undisputed.

17       In 1968, 1969, and 1975, respectively, the IMO adopted TSSs "off San Francisco,"

18   "in the Santa Barbara Channel," and "in the approaches to Los Angeles-Long Beach." See

19   id.  All three TSSs have since been amended by the Coast Guard, most recently in 2000.

20   See 65 Fed. Reg. 46603 (adopting final rule amending TSSs off San Francisco and in

21   Santa Barbara Channel); 65 Fed. Reg. 53911 (adopting final rule amending TSS in

22   approaches to Los Angeles-Long Beach).

23       Blue whales, an endangered species under the ESA, are frequently found off the

24   California coast. (See Cummings Decl. Ex. D (Response to Petition from The Center for

25   Biological Diversity to Implement Emergency Regulations in Southern California to Protect

26   Blue Whales) at 1.)  Ships operating off the coast occasionally strike blue whales,

27   sometimes injuring or killing them.  (See id. at 2.)  In the period between 2000 and 2004,

28   ship strikes were responsible for 0.6 mortalities or injuries to blue whales per year.  (See

3

id.)  In 2007, at least three blue whales were killed by ship strikes, an unusually high number for a single year.  (See id.)  In response to such ship strikes, the Coast Guard, among other things, advised vessels transiting through the Santa Barbara Channel to exercise caution, issued "warnings to commercial vessels planning to transit through the Santa Barbara Channel of the potential for Blue Whales," conducted flights to monitor the location of whales, and recommended that vessels reduce their speeds in the Santa Barbara Channel to 10 knots.  (See Cummings Decl. Ex. B (Coast Guard Blue Whale Operations Update).)  In August 2008, the Coast Guard again warned vessels transiting through the Santa Barbara Channel of "the potential of Blue Whales feeding in the channel."  (See Treece Decl. Ex. I (Local Notice to Mariners) at 1.)

**LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(c).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact.  Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  See Celotex, 477 U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Liberty Lobby, 477 U.S. at 249-50 (citations omitted).  "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light

4

1  most favorable to the party opposing the motion."  See Matsushita, 475 U.S. at 587

2  (internal quotation and citation omitted).

3  **DISCUSSION**

4  In bringing the instant action, plaintiff "does not challenge the validity or substance of

5  the [Coast Guard's] 2000 TSS decisions."  (See Opp'n & Reply at 3:12-13 (emphasis in

6  original).)  Rather, plaintiff's challenge is to what plaintiff asserts is "the Coast Guard's

7  failure to comply with the ESA consultation requirements in connection with ongoing vessel

8  management activities" (see id. at 5:14-6:2) and "ongoing traffic management actions" (see

9  id. at 7:7-8).  Defendants argue that the Court lacks jurisdiction to entertain a challenge to

10  any such activities and actions that were not identified as violations of the ESA in plaintiff's

11  60-Day Notice of Intent to Sue and, further, that plaintiff has failed to identify any activity or

12  action that constitutes "agency action" under the ESA, see § 7(a)(2), that was undertaken

13  by the Coast Guard within the applicable limitations period.

14  **A.      60-Day Notice of Intent to Sue**

15  A citizen suit under the ESA may not be commenced "prior to sixty days after written

16  notice of the violation has been given to the Secretary, and to any alleged violator."  See 16

17  U.S.C. § 1540(g)(2).  This requirement is jurisdictional.  See Southwest Ctr. for Biological

18  Diversity v. U.S. Bureau of Reclamation, 143 F.3d 515, 520 (9th Cir. 1998).  Here,

19  defendants argue, the only alleged violation of the ESA identified in plaintiff's Notice of

20  Intent to Sue is the "implementation of the Santa Barbara Channel TSS" and, consequently,

21  the Court lacks jurisdiction to consider plaintiff's challenge to "all other alleged but

22  unidentified 'shipping traffic management actions' supposedly undertaken by the Coast

23  Guard."  (See Reply at 5:3-8.)  In response, plaintiff argues that its Notice "properly notified

24  the Coast Guard that [the Coast Guard's] ongoing vessel traffic management along the

25  California coast violated the ESA."  (See Response to OSC & Sur-Reply at 2:26-27.)  As

26  discussed below, the Court agrees that plaintiff's Notice adequately identifies ship traffic

27  management activities in the Santa Barbara Channel as alleged violations of the ESA.  The

28  Court disagrees, however, that the Notice gives the Coast Guard sufficient notice of

5

1  plaintiff's intent to sue concerning alleged violations of § 7(a)(2) arising from the TSS off

2  San Francisco or the TSS in the approaches to Los Angeles-Long Beach.

3       "A failure to strictly comply with [§ 1540(g)(2)'s] notice requirement acts as an

4  absolute bar to bringing suit under the ESA."  See Southwest Ctr., 143 F.3d at 520.  "The

5  purpose of the 60-day notice provision is to put the agencies on notice of a perceived

6  violation of the statute and an intent to sue."  Id. (internal quotation and citation omitted).

7  "When given notice, the agencies have an opportunity to review their actions and take

8  corrective measures if warranted."  Id. (internal quotation and citation omitted).  "The

9  provision therefore provides an opportunity for settlement or other resolution of a dispute

10  without litigation."  Id. (internal quotation and citation omitted).

11       Here, the subject line of plaintiff's Notice of Intent to Sue reads as follows: "RE:

12  Notice of Intent to Sue:  Violations of the Endangered Species Act Related to the

13  Management of Ship Traffic in the Santa Barbara Channel"; the first sentence thereafter

14  states that plaintiff intends to bring an action against the Coast Guard "over violations of

15  Sections 2, 7, and 9 of the [ESA] for actions and inactions related to the management and

16  regulation of ship traffic in the Santa Barbara Channel and elsewhere along the California

17  coast."  (See Cummings Decl. Ex. C, at 1.)  The above-referenced portions of the Notice

18  are sufficient to put the Coast Guard on notice that plaintiff has identified the Coast Guard's

19  management of ship traffic in the Santa Barbara Channel as an alleged basis for violations

20  of the ESA.  The Notice fails to provide adequate notice, however, that the geographic

21  scope of such alleged violations extends to the TSS off San Francisco or the TSS in the

22  approaches to Los Angeles-Long Beach.  The only reference therein to any area other than

23  the Santa Barbara Channel consists of the above-quoted phrase "elsewhere along the

24  California coast" (see id.) and one historical notation that "[i]n 2000, the Coast Guard

25  promulgated regulations to implement IMO-adopted changes to the Santa Barbara Channel

26  TSS and the TSS off San Francisco, as well as to codify in regulation the existing TSS in

27  the approaches to Los Angeles-Long Beach" (see id. at 3).  Remarks of such nature

28  contain no suggestion that either of the latter two TSSs forms the basis for an alleged

1   violation of the ESA.  Nor do such remarks suffice even when read in the context of the

2   Notice as a whole.

3          In particular, the remainder of the Notice is devoted solely to a discussion of the

4   Santa Barbara Channel.  The section of the Notice titled "Violations of the ESA" fails to

5   mention any geographic area other than the Santa Barbara Channel and focuses

6   exclusively on the implementation of the TSS in the Santa Barbara Channel.  (See id. at 7

7   ("The Coast Guard's continued implementation of the TSS is violating Sections 2(c) and

8   7(a)(1) of the ESA."); id. at 8 ("The Coast Guard is in violation of Section 7(a)(2) of the ESA

9   and its implementing regulations by failing to initiate and complete consultation on the

10  effects of the TSS implemented by the Coast Guard and resulting routing and operation of

11  ship traffic").)  Similarly, the Notice's "Conclusion" discusses only the Santa Barbara

12  Channel.  (See id. at 9 ("As the above makes clear, the Coast Guard's continued

13  implementation of the Santa Barbara Channel TSS without undertaking ESA Section 7

14  consultation with NMFS violates the ESA").)

15         Accordingly, to the extent plaintiff's claims are based on violations of the ESA arising

16  from the TSS off San Francisco or the TSS in the approaches to Los Angeles-Long Beach

17  (see Compl. ¶¶ 22-24, 37-40), the Court lacks subject matter jurisdiction.[1]

18  **B.     Agency Action**

19         Defendants next assert plaintiff has failed to identify any "agency action," see §

20  7(a)(2), that both triggers a duty to initiate consultation and was taken by the Coast Guard

21  within the six-year limitations period for suits against the United States, as provided in 28

22  U.S.C. § 2401(a).  In response, plaintiff argues that the Coast Guard's "day-to-day

23  management activities trigger ongoing Section 7 obligations."  (See Response to OSC &

24  Sur-Reply at 6:20-7:4.)  In particular, plaintiff argues, the Coast Guard has broad

25  discretionary authority to manage ship traffic, and, consequently, the Coast Guard "has a

26

27         [1]Alternatively, even assuming, arguendo, the Court has jurisdiction over such claims,
    plaintiff has made no separate argument with respect thereto, and, accordingly, such
28  claims fail for the reasons set forth below.

7

1  continuous obligation to ensure that its ongoing management activities do not jeopardize"

2  listed species.  (See id. at 8:17-20.)  The Court, as set forth below, finds plaintiff's

3  arguments unpersuasive.

4         **1.     Agency Action under the TSS**

5         It is undisputed that the Coast Guard's 2000 amendment to the Santa Barbara

6  Channel TSS constituted "agency action" under § 7(a)(2).  Unless the TSS constitutes

7  "ongoing agency action," however, any challenge to the Coast Guard's failure to consult

8  with NMFS in connection therewith is barred by the six-year statute of limitations provided

9  in 28 U.S.C. § 2401(a), as the instant action was not filed until June 18, 2008.  See 28

10  U.S.C. § 2401(a); Cedars-Sinai Med. Ctr. v. Shalala, 177 F.3d 1126, 1129 (9th Cir. 1999)

11  (holding "a cause of action challenging procedural errors in the promulgation of regulations

12  accrues on the issuance of the rule"); see also Pacific Rivers Council v. Thomas, 30 F.3d

13  1050, 1053 (9th Cir. 1994) (discussing concept of "ongoing agency action").[2]

14         The Ninth Circuit has found "ongoing agency action" where an agency acts, retains

15  discretion under such action to benefit listed species, and thereafter continues to act

16  pursuant to such discretion.  See Turtle Island Restoration Network v. Nat'l Marine

17  Fisheries Serv., 340 F.3d 969, 976-77 (9th Cir. 2003) (finding "ongoing agency action"

18  where agency had discretion to place "conditions and restrictions on each permit issued" to

19  benefit listed species and where agency continued to issue such permits); Pacific Rivers

20  Council, 30 F.3d at 1053 (finding "ongoing agency action" where initial actions were

21  "comprehensive management plans governing a multitude of individual projects" and where

22  "every individual project planned" in subject national forests was "implemented according to

23  the [plans]").

24  _____

25         [2]Contrary to plaintiff's argument, such a challenge is not analogous to a claim of
"inaction in violation of statutory duties" (see Response to OSC & Sur-Reply at 12 n.11),
26  but, rather, necessarily entails an allegation that the Coast Guard undertook an "agency
action," see § 7(a)(2), and that such action was improper because it was taken without the
27  Coast Guard's first having engaged in consultation with NMFS, see Western Watersheds
Project v. Matejko, 468 F.3d 1099, 1108 (9th Cir. 2006) (noting "'inaction' is not 'action' for
28  section 7(a)(2) purposes").

By contrast, where an agency has acted and no discretion is retained under such action, there is no "ongoing agency action."  See Western Watersheds Project v. Matejko, 468 F.3d 1099, 1108, 1110 (9th Cir. 2006) (holding "there is no 'ongoing agency action' where the agency has acted earlier but specifically did not retain authority or was otherwise constrained by statute, rule, or contract") (emphasis in original); Envt'l Protection Info. Ctr. v. Simpson Timber Co., 255 F.3d 1073, 1083 (9th Cir. 2001) (holding no duty to reinitiate consultation existed where agency "ha[d] not retained discretionary control" over permit that "would inure to the benefit of" listed species); Sierra Club v. Babbitt, 65 F.3d 1502, 1509 (9th Cir. 1995) (holding no agency action existed where agency lacked discretion under existing contract to influence private action thereunder; noting "the [agency's] inability to influence [private party's] right-of-way project is what sets this case apart from Pacific Rivers"); see also Cal. Sportfishing Protection Alliance v. Fed. Energy Regulatory Comm'n, 472 F.3d 593, 598 (9th Cir. 2006) (distinguishing Pacific Rivers "[b]ecause [management plans] continued to apply to new projects").

Here, plaintiff has failed to show the Coast Guard retained discretion under the TSS and thereafter acted pursuant to such discretion.  First, plaintiff has failed to demonstrate any of the "shipping traffic management actions" it relies upon, discussed infra, have any connection to the TSS.  Moreover, although the Coast Guard has the power to enforce the TSS, such power does not constitute the type of retained discretion that gives rise to "ongoing agency action."  See Western Watersheds Project, 468 F.3d at 1110 (holding ability of agency to "institute enforcement or trespass actions" against violators of agency's regulations "is not ongoing 'discretionary involvement or control'" sufficient to constitute agency action).  Likewise, the Coast Guard's ability to promulgate new rules amending or adjusting the TSS does not indicate the Coast Guard is engaged in "ongoing agency action."  Such ability is shared by virtually every lawmaking and regulatory body with respect to all statutes and regulations promulgated by such body, and plaintiff has failed to show the Ninth Circuit intended the concept of "ongoing agency action" to have such a broad reach.  See, e.g., Cal. Sportfishing, 472 F.3d at 599 (holding provisions in license

9

1   allowing agency to require changes in project operated pursuant thereto, "after notice and

2   hearing," did "no more than give the agency discretion to decide whether to exercise

3   discretion" and thus were "not sufficient to constitute any discretionary agency 'involvement

4   or control' that might mandate consultation by [the agency]").

5        Accordingly, plaintiff has failed to show the Coast Guard is engaged in "ongoing

6   agency action" under the Santa Barbara Channel TSS, and, consequently, any challenge to

7   such TSS is time-barred.

8        **2.        Agency Action Independent of the TSS**

9        Pointing to the Coast Guard's "broad, discretionary statutory authority to protect

10  listed species" (see Response to OSC & Sur-Reply at 11:4-5), plaintiff argues that even if

11  the Coast Guard had not elected to establish a TSS in the Santa Barbara Channel or

12  elsewhere, "the agency would still have continuing ESA obligations arising out of its

13  ongoing management responsibilities under the PWSA" (see id. 11:16-19).  The Court

14  again finds plaintiff's argument unpersuasive.

15       Discretion, without more, is insufficient to trigger the consultation requirements of

16  § 7(a)(2); rather, such requirements are only implicated by "affirmative actions."  See

17  Western Watersheds, 468 F.3d at 1108 (holding "section 7(a)(2) consultation stems only

18  from 'affirmative actions'"; noting "discretion without more is not an 'action' triggering a

19  consultation duty") (citation omitted).  Here, as examples of what it asserts are

20  discretionary actions undertaken by the Coast Guard and sufficient to implicate § 7(a)(2),

21  plaintiff points to: the operation of a global positioning system, the operation of "Aids to

22  Navigation," "marine hazard monitoring," the issuance of weekly Local Notices to Mariners,

23  the issuance of "broadcast notices and vessel traffic service warnings," "aerial and other

24  monitoring," and recommendations as to vessel speed reduction.  (See Response to OSC

25  & Sur-Reply at 10:16-11:9; see also Cummings Decl. Ex. B; Treece Decl. Ex. I.)  Plaintiff

26  cites no authority, however, suggesting such advisory notices and general oversight, even

27  if in part intended to benefit listed species, constitute agency action under § 7(a)(2).

28  Although the regulation defining "agency action" provides a non-exhaustive listing of

10

examples, see 50 C.F.R. § 402.02, and although the term has been "construed broadly,"

see, e.g., Pacific Rivers Council, 30 F.3d at 1055, every case that has addressed the issue

and found agency action has concerned the authorization of, or promulgation of

management plans for, projects or other activities conducted either by third parties or by

the agency.  See Wash. Toxics Coal. v. Envtl. Prot. Agency, 413 F.3d 1024, 1028 (9th Cir.

2005) (approval of use of pesticides); Turtle Island Restoration Network, 340 F.3d at 977

(issuance of fishing permits); Natural Res. Def. Council v. Houston, 146 F.3d 1118, 1123

(9th Cir. 1998) (renewal of water contracts); Pacific Rivers Council, 30 F.3d at 1053

(adoption of "comprehensive management plans" for "multitude of individual projects");

Lane County Audubon Society v. Jamison, 958 F.2d 290, 294 (9th Cir. 1992) (promulgation

of "management criteria" for timber harvest and sales).

    Accordingly, plaintiff has failed to show the Coast Guard has engaged in any

"agency action" independent of the Santa Barbara Channel TSS.[3]

    In sum, the Court finds plaintiff has failed to show the Coast Guard has engaged in

any "agency action" that both triggers a duty to initiate consultation under § 7(a)(2) and was

undertaken within the applicable limitations period.

**CONCLUSION**

    For the reasons stated above:

    1.  To the extent plaintiff alleges violations of the ESA arising from the Coast Guard's

asserted implementation of or actions under the TSS off San Francisco or the TSS in the

approaches to Los Angeles-Long Beach, such claims are hereby DISMISSED without

prejudice for lack of jurisdiction.

---

    [3]The absence of ongoing or new agency action, however, does not suggest a party such as plaintiff has no legal recourse where circumstances affecting listed species assertedly have changed.  Rather, the law provides an appropriate vehicle for seeking such relief.  In particular, a petition for new rulemaking may be filed, see 5 U.S.C. § 553(e), and, if the petition is denied, judicial review of such denial may be sought, see 5 U.S.C. § 704. Additionally, to the extent private parties are asserted to be in violation of the ESA by "tak[ing]" listed species, suit may be brought against such parties under § 9 of the ESA, 16 U.S.C. § 1538.  Here, plaintiff filed a Petition for Emergency Rulemaking with NMFS (see Cummings Decl. Ex. A), which petition was denied (see id. Ex. D).  There is no evidence in the record, however, suggesting plaintiff sought judicial review of such denial.

2.  To the extent plaintiff alleges violations of the ESA arising from the Coast Guard's asserted implementation of or actions under the TSS in the Santa Barbara Channel, or from other asserted shipping traffic management actions in the Santa Barbara Channel, defendants' motion for summary judgment is hereby GRANTED, and plaintiff's motion for summary judgment is hereby DENIED.

**IT IS SO ORDERED.**

Dated:  March 30, 2009

_____
MAXINE M. CHESNEY
United States District Judge

12